**IN THE UNITED STATED DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| VITO PESCE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 11 C 1380 |
| v. | ) | |
| | ) | |
| NUVELL CREDIT COMPANY, LLC , | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

AMY J. ST. EVE, District Court Judge:

Plaintiff, Vito A. Pesce ("Pesce" or "Plaintiff"), brought this action against Defendant Nuvell Credit Company, LLC ("Nuvell" or "Defendant"), alleging a violation of the Fair Credit Reporting Act ("FCRA"). (R. 1.) Pesce contends that Nuvell violates the FCRA by reporting his alleged debt to credit bureaus in March 2010 without notifying them that that debt was in dispute. (*Id.* at 2-3.) On April 5, 2011, Nuvell filed an answer and counterclaim for breach of contract, submitting that Pesce owes it a balance of $5,611.62 for violating a lease agreement over a 2005 Saab 9-3. (R. 18 at 9-11.)

On April 26, 2011, Pesce filed a motion to dismiss Defendant's counterclaim. (R. 21.) Although he concedes that the Court can exercise supplemental jurisdiction over Nuvell's state-law counterclaim, Pesce argues that "exceptional circumstances" or "other compelling reasons" exist that warrant the Court's dismissing the breach-of-contract counterclaim. (*Id.* at 3-5.) He argues that allowing Nuvell to bring this counterclaim would "quell attempts to assert FCRA rights." (*Id.* at 3.) Plaintiff further argues that the counterclaim fails under Federal Rule of Civil Procedure 8 because Nuvell's allegation that a third party assigned it the Saab lease is

inconsistent with the document that Nuvell attached to its answer and counterclaim. (*Id.* at 5-7.)

The Court denies Pesce's motion to dismiss Nuvell's counterclaim. In the first place, Plaintiff's FCRA claim and Defendant's breach-of-contract claim arise from a common nucleus of operative fact. Concerns of judicial efficiency and economy suggest that the parties should litigate them together in one forum. No exceptional circumstances exist that would justify the Court's decision not to exercise supplemental jurisdiction over Nuvell's state-law counterclaim. Pesce's argument that allowing the counterclaim to proceed would discourage people from bringing FCRA claims is not convincing. If the Court were to decline to exercise supplemental jurisdiction over Nuvell's counterclaim, Defendant could nevertheless bring its breach-of-contract claim in state court. This would entail additional inconvenience for Plaintiff in having to litigate two separate cases that involve substantially the same subject matter.

Second, Nuvell's counterclaim meets the requirements of Rule 8. Defendant explicitly alleges that a third party assigned the relevant lease to Nuvell. (R. 18 at 9.) The document attached to the pleading that Pesce relies neither contradicts Nuvell's counterclaim nor renders it implausible.

## BACKGROUND

On February 28, 2011, Pesce sued Nuvell in this Court for an alleged violation of the FCRA. (R. 1.) According to the Complaint, the present case results from Pesce's termination of a lease with Saab Financial in March 2008. (*Id.* at 2.) Following this termination, Plaintiff alleges that Saab Financial never billed him and reported the relevant account to TransUnion as closed, and paid as agreed, displaying a $0 balance. (*Id.*) Almost two years later, Nuvell allegedly wrote to Pesce with respect to a purported debt of $6,567.75 owed for the Saab

2

Financial account, notifying him that Nuvell would report this information to the credit bureaus. (*Id.*) The Complaint provides that Pesce wrote back a week later, disputing that "the alleged debt was valid and owing," and then wrote a second letter to the same effect twelve days after sending the first. (*Id.*) Notwithstanding these letters, Plaintiff alleges that "Nuvell reported [his] alleged debt to the credit bureaus in March 2010 . . . [and] failed to report that the alleged debt was in dispute[.]" (*Id.* at 2-3.)

Pesce maintains that, "Nuvell was required[,] under 15 U.S.C. § 1681s-2(b), to respond to the request for reinvestigation initiated by plaintiff by completing an inquiry into the facts underlying the trade-line and providing accurate information to the credit reporting agencies regarding that trade-line." (*Id.* at 4.) He also contends, among other things, that Nuvell violated the FCRA in knowingly reporting erroneous credit information. (*Id.*)

On April 5, 2011, Nuvell filed its answer, affirmative defenses, and counterclaim for breach of contract. (R. 18.) Defendant's counterclaim alleges that, on June 25, 2005, Pesce entered into a four-year lease with Motors Werks Partners L.P. for a 2005 Saab 9-3. (*Id.* at 9.) Subsequently, Motors Werks assigned the lease to Nuvell, which "performed all of its obligations under the terms of the Lease[.]" (*Id.*) According to the terms of the contract, "Pesce was required to remit monthly payments in the amount of $437.85" for forty-eight months. (*Id.*) The contract further required that, should Pesce return the vehicle prior to the end of the lease, he would owe, among other things, any unpaid monthly payments. (*Id.* at 9-10.) It also provided that, in the event of default, "Nuvell is entitled to its attorneys' fees, collection costs, and court costs." (*Id.* at 10.) Subsequently, "Pesce returned the vehicle to Motor Werks, terminating the Lease over fifteen (15) months before the End Date[,]" at which time Pesce "owed a balance of

3

$5,611.62[.]" (*Id.*) On the basis of these allegations, Defendant contends that Pesce is liable to it in that amount for breach of contract. (*Id.* at 11.)

On April 26, 2011, Pesce filed the motion to dismiss Nuvell's counterclaim that is presently before the Court.

## LEGAL STANDARD

"A motion under Rule 12(b)(6) challenges the sufficiency of the complaint to state a claim upon which relief may be granted." *Hallinan v. Fraternal Order of Police of Chi. Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). Pursuant to Rule 8(a)(2), a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). As the Seventh Circuit recently explained, this "[r]ule reflects a liberal notice pleading regime, which is intended to 'focus litigation on the merits of a claim' rather than on technicalities that might keep Relators out of court." *Brooks v. Ross*, 578 F.3d 574, 580 (7th Cir. 2009) (quoting *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514 (2002)). This short and plain statement must "give the defendant fair notice of what the claim is and the grounds upon which it rests ." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). Under federal notice-pleading standards, a plaintiff's "factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Put differently, a "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, -- U.S. --, 129 S. Ct. 1937, 1949 (2009) (quoting *Twombly*, 550 U.S. at 570); *see also Cooney v. Rossiter*, 583 F.3d 967, 971 (7th Cir. 2009) (holding that the amount of factual allegations required to state a plausible claim for relief depends on the complexity of the legal theory). "[W]hen ruling on a defendant's motion to

4

dismiss, a judge must accept as true all of the factual allegations contained in the complaint."
*Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Justice v. Town of Cicero*, 577 F.3d 768, 771 (7th Cir. 2009) (holding that the court construes complaints in the light most favorable to the plaintiff, drawing all reasonable inferences in the plaintiff's favor).

## ANALYSIS

In moving to dismiss Defendant's counterclaim, Pesce argues that the Court should decline to exercise supplemental jurisdiction over the same, lest the Court discourage the filing of FCRA claims. (R. 21 at 3-5.) He also argues that the counterclaim fails to satisfy the pleading requirements of Federal Rule of Civil Procedure 8. (*Id.* at 5-7.) For the following reasons, the Court disagrees and denies Plaintiff's motion.

**I.     The Court Will Exercise Supplemental Jurisdiction over Nuvell's Counterclaim**

The Court has original jurisdiction over "all civil actions arising under the Constitution, laws, or treaties of the United States." *Hansen v. Bd. of Trs. of Hamilton S.E. Sch. Corp.*, 551 F.3d 599, 607 (7th Cir. 2008) (quoting 28 U.S.C. § 1331). The Court also enjoys "supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). As the Seventh Circuit has observed, "federal courts may exercise supplemental jurisdiction over a state claim if the state and federal claims 'derive from a common nucleus of operative fact[.]'" *Hansen*, 551 F.3d at 607 (quoting *United Mine Workers v. Gibbs*, 383 U.S. 715, 725 (1966)).

Taking as true the well-pleaded allegations of the Complaint and those that accompany the counterclaim, there is no question that Plaintiff's FCRA claim and Defendant's breach-of-

5

contract claim are closely related.  Plaintiff alleges that Defendant violated the FCRA by inaccurately reporting Pesce's alleged debt on the car lease to credit bureaus.  Defendant maintains that Plaintiff committed a breach of contract by violating the very same lease.  The two claims are intertwined.  For this reason, Nuvell's state-court counterclaim falls under this Court's supplemental jurisdiction pursuant to Section 1367(a).

Nevertheless, federal courts can decline to exercise this jurisdiction in certain instances.  Specifically, they "may decline to exercise supplemental jurisdiction over a claim under subsection (a) if: (1) the claim raises a novel or complex issue of State law, (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction, (3) [it] has dismissed all claims over which it has original jurisdiction, or (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction." 28 U.S.C. § 1367(c).

Pesce does not argue that any of the first three conditions exist in the present case.  Instead, he submits that "preventing the chilling effects of litigating FRCA [*sic*] claims with claims to collect underlying debt is an exceptional circumstance to decline jurisdiction."  (R. 21 at 5.)

The Court does not believe that the unsubstantiated possibility of a chilling effect constitutes an "exceptional circumstance" or "compelling reason" sufficient to justify its declining to exercise supplementary jurisdiction.  There are strong reasons for the Court to hear the parties' cross-claims in the same proceeding.  As the Seventh Circuit recently observed, "[t]he identity of the issues, the convenience to both plaintiffs and defendants of not having to litigate in multiple forums, and the economy of resolving all claims at once suggests that an

exercise of supplemental jurisdiction will normally be appropriate." *Ervin v. OS Rest. Servs., Inc.*, 632 F.3d 971, 981 (7th Cir. 2011). In addition, the extent of the chilling effect that would accompany this Court's decision to exercise supplemental jurisdiction over Defendant's breach-of-contract claim is questionable. If defendants in FCRA cases are predisposed to bring state-law counterclaims in an effort to dissuade suit in the first place, they could always file such claims in state court. The net result would be that plaintiffs in FCRA cases would have to litigate two related actions in different fora. Further, it is not clear why Pesce's argument is unique to the FCRA. The same objection would presumably apply any time a court exercises supplemental jurisdiction over state-law counterclaims that defendants subsequently bring when sued in federal court.

Finally, to support his argument, Pesce only cites unpublished decisions from outside the Seventh Circuit's jurisdiction. (*Id.* at 3-4.) Nuvell, in contrast, points to a number of decisions from this district. (R. 25 at 5-6.) These include *Mufwene v. Am. Credit Exch.*, No. 10-CV-2591, 2010 WL 4539451 (N.D. Ill. Nov. 3, 2010). In response to the same argument now presented by Plaintiff, Chief Judge Holderman reasoned:

> Mufwene has not identified any relevant Seventh Circuit case law nor has this court's research uncovered any precedential authority supporting Mufwene's position. This court respectfully disagrees with the decisions cited by Mufwene and instead finds that exercising its supplemental jurisdiction over American Credit's counterclaim will support judicial efficiency and economy by not requiring American Credit to burden the state court system with parallel litigation over overlapping issues. Nor does the court find that allowing this counterclaim to proceed before this court will 'have a chilling effect' on consumers seeking protection under the FDCPA.

*Id.* at *2. The Court agrees with Chief Judge Holderman's well-reasoned analysis, and therefore elects to exercise its supplemental jurisdiction over Defendant's counterclaim.

## II. Nuvell's Counterclaim Satisfies the Pleading Requirement of Rule 8

Plaintiff's second and final argument is that the Court should dismiss Nuvell's counterclaim under Federal Rule of Civil Procedure 12(b)(6). (R. 21 at 5-7.) He observes that, according to the document that Nuvell attached to its answer and counterclaim—which is thus part of the pleadings, *see Langone v. Miller*, 631 F. Supp. 2d 1067, 1070 (N.D. Ill. 2009)—"the lease would be assigned to SAAB Leasing Co." (R. 21 at 5.) Plaintiff submits that, as a result of this document, Nuvell has pleaded itself out of court because, if Defendant did not receive assignment of the lease, it has no standing. (*Id.* at 6.)

The Court disagrees. The counterclaim alleges that, "[s]ometime after June 25, 2005, Motor Werks assigned the Lease to Nuvell." (R.18 at 9.) The document Nuvell attaches to its answer and counterclaim states that, "[i]f this box is checked, Lessor (Realtor) will assign this lease and the vehicle to Saab Leasing Co." (R. 18-1 at 2.) The box was checked. (*Id.*) The Court does not perceive this provision of the purported lease agreement attached to the answer and counterclaim as contradicting the counterclaim's allegation that Motor Werks assigned the lease to Nuvell. It is entirely plausible that the original assignee of the lease subsequently assigned it onto another party, such as Defendant. The counterclaim for breach of contract states a claim because its factual allegations, if true, would give rise to a plausible right to relief. *See Twombly*, 550 U.S. at 544, *passim*. Ultimately, discovery will reveal the relevant facts, including whether, as Defendant maintains in its response brief, "[t]he lease was . . . assigned to Saab Leasing Co. Nuvell is a successor in interest to Saab Leasing Co., which is no longer a going concern." (R. 24 at 9.)

## CONCLUSION

For the preceding reasons, the Court denies Plaintiff's motion to dismiss counterclaim

**Dated:** May 26, 2011

                          **ENTERED**

                        _____
                        **AMY J. ST. EVE**
                        **United States District Court Judge**